**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANTHONY SIDES,            )
                                     )
      Plaintiff,           )     Case No. 1:21-cv-249
                                     )
vs.                          )
                                   )
FISCUS HEARING EXAMINER,  )
OBERLANDER, R. ADAMS, E.     )
MONGELLUZZO, M. BLICHA, I.   )
GUSTAFSON, A. APODACA and  )
GATTO,                     )
                                   )
      Defendants.        )

## <u>MEMORANDUM OPINION</u>[1]

Plaintiff Anthony Sides ("Sides") is an inmate in the custody of the Pennsylvania Department of Corrections who is currently housed at the State Correctional Institution at Forest ("SCI-Forest"). He asserts various civil rights claims under 42 U.S.C. § 1983 against defendants Fiscus, Oberlander, R. Adams, E. Mongelluzzo, M. Blicha, I. Gustafson, A. Apodaca, and Gatto[2] (collectively, "Defendants") (ECF No. 1). Defendants Adams, Mongelluzzo, Blicha, and Gustafson are members of the Program Review Committee ("PRC") (collectively, the "PRC Defendants").[3] Fiscus is a hearing examiner, Oberlander is the Superintendent of SCI-Forest, Apodaca is the Restricted Housing Unit ("RHU") captain in charge of daily operations of the RHU, and Gatto was a lieutenant in the RHU.

Currently pending is Defendants' motion to dismiss the Second Amended Complaint. For the reasons that follow, their motion will be granted in part and denied in part.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case as authorized by 28 U.S.C. § 636. *See* ECF Nos. 4, 30.
[2] Defendant Gatto passed away on or about March 12, 2022 (ECF No. 34).
[3] The PRC has been terminated as a defendant.

## I.    Procedural History

After commencing this action in September 2021, Sides filed an Amended Complaint (ECF No. 13) that included three exhibits.  He later filed an identical Second Amended Complaint (ECF No. 24) with five exhibits.  Sides states that all Defendants are being sued in their individual capacity for willful misconduct.  *See* ECF No. 24, pp. 9-12, ¶¶ 4-12.  He asserts various constitutional claims, including First Amendment retaliation claims, Eighth Amendment cruel and unusual punishment claims, and Fourteenth Amendment equal protection and due process claims. *See* ECF No. 24, p. 12.

Defendants have filed a Motion to Dismiss (ECF No. 35) and supporting Brief (ECF No. 36).  Sides filed a Brief in Opposition to the Motion to Dismiss (ECF No. 38).

## II.    Facts Pleaded in Second Amended Complaint

On February 4, 2021, while he was housed at SCI-Pine Grove, a misconduct was issued against Sides after he broke a lightbulb in order to attempt suicide with the chards of glass.  ECF No. 24, ¶ 13; ECF No. 8-3.[4]  Sides contends that it is against prison policy to discipline a prisoner for mental health behavior related to a suicide attempt.  ECF No. 24 ¶ 20.  He cites DC-ADM 801, which states: "An inmate who attempts suicide or engages in self-injurious behavior ("SIB") whether mentally ill or otherwise, shall not be subjected to discipline for that behavior."  ECF No. 24-1, p. 2.  DC-ADM 801 lists examples of SIB which include "a socially unacceptable behavior that is generally a response to a psychological crisis that results in tissue damage…"  *Id.*

Sides was transferred to SCI-Forest on February 10, 2021, and placed in administrative custody (AC).  ECF No. 24 ¶ 28; ECF No. 24-5, p. 4.  On February 11, 2021, Sides attended a

---

[4] Sides attached the misconduct as Exhibit C (ECF No. 8-3) to his original Complaint (ECF No. 8).

PRC review.[5]   ECF No. 24 ¶ 34; ECF No. 24-5, p. 4.   The PRC review document states, "On 2/11/21, Mr. Sides met with PRC for a AC review.   Inmate Sides would like to know what is going on."  ECF No. 24-5, p. 4.   The PRC document states that "Mr. Sides … will continue in AC status pending misconducts."   *Id.*   Sides also alleges that the PRC Defendants told him that he was at a new prison and should "stop with the complaints" and "let sleeping dogs lie."  ECF No. 24, p. 7.

Sides claims that as soon as he was transferred to SCI-Forest, he was subjected to retaliation because of a lawsuit he had filed.   ECF No. 24 ¶ 29.   The alleged retaliatory treatment included Sides' continuous placement in a restraint chair in a "hard cell that had blood, feces, and remnants of pepper spray throughout."   *Id.* ¶ 30.   In addition, Sides was denied hygiene items, paper and pen, exercise, use of the law library, and utensils.  *Id.* ¶ 31.   Legal documents in his possession from his pending lawsuit were also withheld.  *Id.* ¶ 32.   He claims that Apodaca and Gatto "issued orders and/or took part in the arbitrary treatment."  *Id.* ¶ 36.

Sides alleges that although he was never served with any paperwork related to the misconduct, a misconduct hearing officiated by Fiscus and attended by Apodaca was held on February 25, 2021.  ECF No. 24 ¶¶ 16-17.  Sides claims that before the hearing he overheard Fiscus and Apodaca discussing Sides' history of litigation against the prison system.  *Id.* ¶ 18.  At the end of the misconduct hearing, Fiscus sentenced Sides to thirty days disciplinary time in the RHU.  *Id.* ¶ 19.  When he objected, Fiscus laughed and told him that he could appeal despite knowing that by the time his appeal was heard, the sentence would have been served.  *Id.* ¶ 21. Sides claims that Fiscus deliberately subjected him to disciplinary action despite knowing that she lacked the

---

[5] The form identifies the review as a 90-day review but according to the dates on the document Sides was only at SCI-Forest for one day before his review.

authority to do so and subjected him to cruel and unusual punishment by purposefully placing him in the RHU. *Id.* ¶ 22.

Sides appealed the misconduct to the PRC and "talked" to Oberlander, Adams, Mongelluzzo, Blicha, and Gustafson. *Id.* ¶ 23. Sides claims that the PRC Defendants agreed that Fiscus had exceeded her authority and that her decision was deliberate and arbitrary but failed to overturn her decision. *Id.* ¶ 24. He then appealed to the Chief Hearing Examiner who vacated the misconduct decision without prejudice. *Id.* ¶ 25; *see also* ECF No. 8-3. By the time the misconduct was overturned, however, Sides had served his thirty-day punishment in the RHU. *Id.*; ECF No. 24-2.

## III.    Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and view them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A

"formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.   *See California Pub. Emp. Ret. Sys. v. The Chubb Corp*., 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist*., 132 F.3d 902, 906 (3d Cir. 1997)).   Nor must the Court accept legal conclusions disguised as factual allegations.   *See Twombly*, 550 U.S. at 555; *see also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir. 2010)).   This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court should "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."   *Lum v. Bank of Am*., 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997), *abrogated on other grounds by Twombly,* 550 U.S. at 557, *as recognized in In re Lipitor*

*Antitrust Litig.,* 868 F.3d 231, 249 (3d Cir. 2017).   The Court may consider facts and make inferences where it is appropriate.   At the same time, "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 F. App'x 227 (3d Cir. 2020) (citations omitted).   *See also Baez v. Mooney*, 2021 WL 816013, at *3 (W.D. Pa. Feb. 8, 2021), *report and recommendation adopted*, 2021 WL 808726 (W.D. Pa. Mar. 3, 2021).

Finally, because Sides is representing himself, the allegations in the Second Amended Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).   If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements.   *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

## IV.   Discussion

Section 1983 "provides a cause of action against state actors who violate an individual's rights under federal law." *Filarsky v. Delia*, 566 U.S. 377, 380 (2012).   Section 1983 does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws."   *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).   "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

In this § 1983 action, Sides claims that his First, Eighth, and Fourteenth Amendment rights were violated by Defendants.  With respect to Defendant Fiscus, Sides asserts that she violated his First Amendment rights by retaliating against him because he had filed other complaints against the prison system.  According to Sides, Fiscus also violated his Eighth Amendment right to be free from cruel and unusual punishment by sentencing him to thirty days in the RHU.  He further alleges that Fiscus violated his Fourteenth Amendment rights by denying him due process and equal protection of the law.

As it relates to Defendants Oberlander, Adams, Blicha, Mongelluzo, Gustafson, Apodaca, and Gatto, Sides alleges violations of his First, Eighth, and Fourteenth Amendment rights for knowingly allowing Fiscus to inappropriately punish Sides through the misconduct procedure and assisting to implement the punishment.  He alleges that they "knowingly allowed Fiscus to subject the plaintiff to unlawful disciplinary treatment…"  ECF No. 24, p. 21; ECF No. 24-5, Ex. F.  Sides also claims he was subject to retaliation from the day he was transferred to SCI-Forest.  *Id.* at ¶ 29.

Defendants assert that Sides failed to adequately allege the personal involvement of each of the defendants in the alleged constitutional claims or otherwise failed state a claim against various defendants.  In addition, they contend that Sides has failed to adequately plead any constitutional claims under the First, Eighth, or Fourteenth Amendments.  These contentions will be addressed below.

### A. **First Amendment Retaliation Claim**

#### 1. Claim against Oberlander, the PRC Defendants and Gatto

Sides alleges that about one week before his transfer to SCI-Forest, he attempted suicide. Given the fact that Sides had allegedly engaged in self injurious behavior, his placement in AC at SCI-Forest was pursuant to Department of Corrections' policy.[6]

A PRC review document dated February 12, 2021 (ECF No. 24-5) states, "Mr. Sides arrived at SCI Forest in AC status on 2/10/21 pending misconducts." It goes on to say: "On 2/11/21, Mr. Sides met with PRC for a AC review. Inmate Sides would like to know what is going on. PRC informed Mr. Sides that he will continue AC status pending misconducts." ECF No. 24-5, p. 4. There is no additional detail about any communications during this review.

Sides alleges that he faced retaliation as soon as he arrived, including being placed in a restraint chair and lodged in in a cell that had blood, feces and remnants of pepper spray. Further, he was denied all hygiene items, toilet paper, a pen and writing materials and his legal work regarding his other lawsuit. He was also denied "yard, showers, law library" and was "made to eat with his hands." ECF No. 24 p. 7. Sides states that "Oberlander, PRC, Apodaca, and Gatto knowingly subjected the plaintiff to retaliatory treatment for him filling [sic] complaints and litigating *Sides v. Wetzel*, C.A. 20-cv-1168." *Id.* p. 6. Further, "Oberlander, PRC, Apondaca and Gatto ordered and/or acquienced [sic] in the unconstitutional retaliatory behavior to disway [sic] the plaintiff from litigating and filing complaints." *Id.* p. 5. When he complained to the PRC, he

---

[6] According to Department of Corrections' policies, "[i]t is the policy of the Department to place an inmate in Administrative Custody (AC) status whose presence in general population would constitute a threat to life, property, himself/herself, staff, other inmates, the public, or the secure or orderly running of the facility.*"* DC-ADM 802 at III. "Administrative Custody (AC) is a status of confinement for non-disciplinary reasons that provides a closer supervision, control, and protection than is provided in general population. An inmate confined in this status shall not have the same privileges available as in the general population." *Id.* at § 3(A)(1).

was told that he "was at a new prison," "should 'stop with the complaints" and "let sleeping dogs lie." ECF No. 24, p. 18, ¶ 35.  Sides also claims that "Apodaca and Gatto issued the Orders and/or took part in" the retaliatory treatment.  *Id.* ¶36.

A prisoner asserting a retaliation claim must allege facts demonstrating that (1) he engaged in constitutionally protected conduct; (2) prison officials took an adverse action against the plaintiff that was "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) the existence of "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)) (alteration in original); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Notably, Sides was placed in AC status upon his arrival and the PRC made the determination to maintain this status pending his misconduct hearing.  Assuming that Sides complained about the circumstances of his AC confinement during the review with the PRC, Sides engaged in a constitutionally protected activity.  However, no adverse action by the PRC Defendants has been pleaded by Sides.  His continued placement in AC was done pursuant to DOC policy.  Nor does he allege that the members of the PRC were in a position to determine the merits of the misconduct or were responsible with doing so.  Thus, the decision to maintain his AC status cannot be interpreted as an adverse action.

To the extent that Sides claims that his litigation regarding his previous incarceration at SCI-Pine Grove is constitutionally protected activity, he is correct.  *See Lakkis v. Lahovski*, 994 F. Supp. 2d 624, 636 (M.D. Pa. 2014) ("Filing a lawsuit constitutes protected activity under the First Amendment.").  However, Sides does not plead that the PRC Defendants knew about the lawsuit referenced in the complaint.  Similarly, Sides does not allege that Gatto or Oberlander were

aware of his lawsuit.  Without any such allegation, there is no causal connection between his lawsuit and his continued placement in AC status and thus the requisite elements of a retaliation claim have not been pleaded.

Sides may also be attempting to claim that the PRC Defendants or Oberlander engaged in retaliatory conduct because they did not address the conditions about which he complained during his PRC review.  However, there are no factual allegations in the Second Amended Complaint to the effect that each of the PRC Defendants and/or Oberlander had any responsibility for or involvement in creating the alleged conditions of his confinement.  Indeed, Sides alleges that it was Defendants Apodaca and Gatto who "issued the orders and/or took part" in these conditions.[7]

A plaintiff must plead a defendant's personal involvement in the alleged deprivation of his constitutional right.  *See, e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983.  Thus, each defendant is liable only for his or her own conduct.  *See, e.g.*, *id.*; *see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional Med.*, 766 F.3d 307, 316 (3d Cir. 2014) (rev'd sub. nom. on other grounds 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (*en banc*)).

Sides has not adequately pleaded any personal involvement by the PRC Defendants or Oberlander.  Even assuming that each of the PRC Defendants advised Sides to stop complaining,

---

[7] Because Sides does not allege that Gatto actually knew about the existing lawsuit, the retaliation claim against him fails for the same reason.  Whether Sides has plausibly stated an Eighth Amendment claim against Gatto or Apodaca will be addressed herein.

none of them are alleged to have created or ordered Sides to be subjected to these conditions. Similarly, there are no allegations that Oberlander directed Sides to be housed under these conditions.

Sides also alleges that the PRC Defendants "acquiesced" in retaliatory behavior by others. The Court of Appeals has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates.  First, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm*." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr*., 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist*., 882 F.2d 720, 725 (3d Cir. 1989)).  Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id*. (citing *Baker v. Monroe Twp*., 50 F.3d 1186, 1190 (3d Cir. 1995)).  "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

The only retaliatory behavior of others for which the PRC Defendants and Oberlander are alleged to be liable is the conduct of Fiscus.[8]  There are no facts pleaded by Sides that the PRC Defendants or Oberlander were involved in the misconduct hearing, knew about the alleged conversation between Fiscus and Apodaca, or had any reason to know that Fiscus allegedly retaliated against Sides due to his litigation history by finding him guilty of a misconduct and imposing a sentence to be served in the RHU.  Thus, even assuming that Fiscus was supervised by

---

[8] Sides does not allege that the PRC Defendants or Oberlander are liable for the conduct of Gatto or Apodaca.

the PRC Defendants or Oberlander, which Sides has not alleged, Sides has not stated a claim for retaliation against the PRC Defendants or Oberlander based on any alleged retaliation by Fiscus.

For these reasons, the retaliation claim against the PRC Defendants, Oberlander and Gatto will be dismissed without prejudice.

2.   Retaliation Claim against Fiscus and Apodaca

Sides also alleges that Fiscus and Apodaca retaliated against him due to his preexisting litigation.  *Id.* pp. 2-3.  Sides contends that on February 25, 2021, just before the misconduct hearing, he overheard Fiscus and Apodaca discussing his ongoing litigation against the prison system.  Fiscus then held Sides' misconduct hearing in the presence of Apodaca and sentenced Sides to thirty days in the RHU.  Sides contends that the wrongful upholding of the misconduct and the punishment in the RHU imposed by Fiscus were in retaliation for Sides' litigation in his other cases against the prison system.

As previously noted, filing a lawsuit is a protected activity, and thus Sides meets the first element of a First Amendment retaliation claim.  The second element of an adverse action is also satisfied.  Sides alleges that the issuance of the misconduct for the destruction of property during a suicide attempt is contrary to prison policy.  Thus, according to Sides, Fiscus took an adverse action against him by deliberately sustaining an improperly issued misconduct.  *See, e.g.*, *Mitchell*, 318 F.3d at 530 (holding that prisoner's allegation that he was falsely charged with misconducts in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); *Smith v. Pennsylvania Dep't of Corr.*, 2011 WL 4573364, at *5 (W.D. Pa. Sept. 30, 2011). Finally, Sides's claim may support an inference of causation by alleging facts to show "(1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link."  *Brandon v.*

*Burkhart*, 2020 WL 10731719, at *11 (W.D. Pa. Nov. 16, 2020), report and recommendation adopted, 2021 WL 3563269 (W.D. Pa. Aug. 12, 2021); *Snider v. Alvarez*, 2020 WL 6395499, at *18 (M.D. Pa. Nov. 2, 2020).  The short proximity between the alleged discussion between Fiscus and Apodaca about Sides' pending litigation and Fiscus' actions as alleged in the Second Amended Complaint may support an inference of causation.

Thus, Sides has alleged that he engaged in constitutionally protected conduct and Fiscus took an adverse action against him by imposing punishment despite knowing that it was against prison policy.  While not explicitly pleaded, an inference can reasonably be drawn that there was a causal link between the conduct and the adverse action.  At this stage of the proceedings, where all pleaded facts must be accepted as true, Sides has adequately pleaded a retaliation claim against Fiscus.  Therefore, Defendants' motion will be denied as to the retaliation claim against Fiscus.

By contrast, Sides does not plead that Apodaca was personally involved in any conduct that can be construed as retaliatory.  Apodaca had no role in the misconduct hearing and was not responsible for the decision reached by Fiscus or the punishment imposed.  The mere fact that he told Fiscus about Sides' litigation history is insufficient to support the elements of a retaliation claim.  Thus, Apodaca cannot be liable for retaliation based on these events.

Sides also alleges that Apodaca "issued the orders and/or took part" in the conditions of his confinement.  The Second Amended Complaint does not allege whether the conditions about which Sides complains occurred when he was housed in administrative custody, the RHU or both.  As Apodaca was a captain based in the RHU, Sides fails to allege any facts that would support a claim that Apodaca issued orders or had any role in creating or acquiescing in the conditions of his confinement before he was housed in the RHU.  And whether any unconstitutional conditions existed in the RHU is insufficiently pleaded.  Thus, Sides' allegations are insufficient to state a

retaliation claim against Apodaca, and his retaliation claim against him will be dismissed without prejudice.[9]

### B. **Eighth Amendment Claim**

Two requirements must be met to prove a violation of the Eighth Amendment: First, the deprivation of rights alleged must be, objectively, "sufficiently serious," and second, a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). To satisfy the second prong of the test, a prison official must have a "sufficiently culpable state of mind." *Id*. (citations omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id*. "A prison official may be held liable under the Eighth Amendment for acting with 'deliberate indifference' to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id. at* 825.

"[D]eliberate indifference is a subjective state of mind that can, like any other form of scienter, be proven through circumstantial evidence and witness testimony." *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017). Because a defendant's state of mind, like other facts, can be proved by circumstantial evidence, the *Farmer* standard does not require a defendant to admit his consciousness of the risk of serious harm before liability can be imposed. At the same time, even gross errors of judgment are not constitutional violations; liability requires subjective, not objective, culpability. *See Farmer*, 511 U.S. at 843 n.8.

---

[9] Sides also alleges that Fiscus and Apodaca retaliated against him for exercising his right to access the courts, which he describes as "litigating and filing complaints." Notably, Sides does not allege that this conduct prevented his access to the courts. Similarly, while Sides asserts that at some point he did not have access to the library, writing tools and legal documents, he does not allege any actual injury as a result. *See Oliver v. Fauver,* 118 F.3d 175, 177 (3d Cir. 1997).

The Court of Appeals for the Third Circuit has explained:

> "Deliberate indifference," therefore, requires "obduracy and wantonness," *Whitley v. Albers*, 475 U.S. 312, 319 (1986), which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (stating that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm").

*Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (parallel citations omitted).

### 1.   Claim Against the PRC Defendants and Oberlander

Sides alleges that at some unspecified time, he was placed in a restraint chair in a "hard cell that had blood, feces, and remnants of pepper spray throughout." *Id.* ¶ 30.[10]  In addition, Sides claims to have been denied hygiene items, paper and pen, exercise, use of the law library, and utensils.  Further, legal documents in his possession from his pending lawsuit were also withheld.

Sides does not allege that any of the PRC Defendants or Oberlander were responsible for imposing these conditions.  Further, he does not claim that any or all of them established or maintained an policy, practice or custom that directly caused harm to Sides.  Nor does he allege that these defendants directed others to violate his rights.  Thus, in order to establish their liability for the conduct of others, Sides must plead facts that each of these defendants knew about and acquiesced in the improper conduct of others.  Sides fails to do so.  At most, he alleges that he "began" to discuss the conditions of his confinement with the PRC Defendants and Oberlander and someone told him to stop complaining.

In order to state a plausible Eighth Amendment claim, Sides must allege facts that the PRC Defendants and Oberlander were deliberately indifferent to a substantial risk of serious harm to his health or safety.  The majority of the alleged unconstitutional conditions do not relate to any

---

[10] As previously discussed, it is not possible to determine which of the complained-of conditions relate to his confinement when in administrative custody, in the RHU or otherwise.

such risk.  In fact, the only possible condition alleged that might represent such a risk is that for an unstated time, he was placed in a cell that had "blood, feces, and remnants of pepper spray." However, Sides does not state when or for how long these conditions of his confinement occurred, and without such facts, he has failed to plead a serious risk of harm to his health or safety or why any of these defendants are liable for these conditions.  That is, absent additional details, Sides has not adequately stated a plausible Eighth Amendment claim against the PRC Defendants and Oberlander. *See Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

Moreover, as the Defendants note, each of these defendants is only responsible for his own conduct.   To impose individual liability, Sides must plead that each of them individually participated in the alleged constitutional violations or approved of them.  He fails to do so; rather, he merely references all of them as a group.  This is inadequate to state a claim against each of them. *See, e.g.*, *Mitchell v. Jones*, 2022 WL 2063256, *2 (W.D. Pa. June 8, 2022) (plaintiff's allegations that defendants collectively violated his constitutional rights did not state a claim against any defendant because to state a viable claim against a defendant the plaintiff must allege that defendant's personal involvement).

Thus, because Sides' Second Amended Complaint fails to plausibly allege that each of the PRC Defendants and Oberlander were deliberately indifferent to a serious risk to his health or safety, his claim against them fails and the Court will dismiss it without prejudice.

### 2.  Claim against Fiscus

Sides' Eighth Amendment claim against Fiscus is that she subjected him to cruel and unusual punishment by wrongfully sentencing him to a period of confinement in the RHU.  The substance of his claim is that after he was found guilty of a misconduct by Fiscus, he was placed

in a cell that may have had unsanitary conditions and had certain restrictions on his activities. While Fiscus imposed the penalty for misconduct, there are no allegations in the Second Amended Complaint that Fiscus personally placed or directed Sides to be placed in a particular cell in the RHU or that certain unconstitutional conditions or restrictions be imposed while confined there. Further, he does not allege that Fiscus had any role or responsibility for the conditions, policies or restrictions in the RHU.  She is, as he states, a hearing officer.

Placing an inmate in restricted housing does not violate the Eighth Amendment "as long as the conditions of confinement are not foul, inhuman or totally without penological justification." *Freeman v. Miller*, 615 F. App'x 72, 77 (3d Cir. 2015).  "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Only 'extreme deprivations' meet this standard [of a constitutional violation]."  *Freeman*, 615 F. App'x at 78.  Sentencing Sides to the RHU for thirty days as a form of discipline, even if deliberately and maliciously done, does not prove obduracy or wantonness in the context of a serious risk to Sides' health and welfare. Simply put, Sides has neither established the existence of cruel and unusual punishment in the RHU or liability on the part of Fiscus even assuming that unconstitutional conditions existed there.

Therefore, Sides fails to state an Eighth Amendment claim against Fiscus fails and the Court will dismiss it with prejudice.

### 3. Claim Against Apodaca and Gatto

Sides' sole Eighth Amendment claim against Apodaca and Gatto is that each of them "issued orders" related to his alleged conditions of confinement while Sides was incarcerated in

the RHU.[11]  These bald statements do not state a viable claim against either of them.  There are no facts pleaded in the Second Amended Complaint that either of these defendants placed, directed or even knew about the placement of Sides in a cell with feces, blood or remnants of pepper spray (or for that matter, that these conditions existed in the RHU, as opposed where he was confined prior to the imposition of discipline by Fiscus).

The remaining alleged violations (placement in a hard cell, use of a restraint chair and withholding of legal documents, hygiene items, paper and pen, exercise, use of the law library and utensils) do not represent cruel and unusual punishment.  While certain restrictions are reasonable in some cases, conditions of confinement should not "inflict pain, much less unnecessary and wanton pain."  *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *see also Freeman*, 615 F. App'x at 78 ("Placing Freeman in the hard cell and removing items he could use to either harm himself or block guards from observing his condition was a reasonable response to his suicide threat and the need to deter such behavior.  His stay in the hard cell did not violate the Eighth Amendment so long as the conditions of his confinement during that period were also constitutional."); *see also Knight v. Armontrout,* 878 F.2d 1093, 1096 (8th Cir. 1989) (holding that 13-day deprivation of recreation was not unconstitutional because there was no harm); *Harris v. Fleming,* 839 F.2d 1232, 1234-35 (7th Cir. 1988) (holding five-day denial of toilet paper and 10-day deprivation of soap, toothbrush, and toothpaste insufficient to state Eighth Amendment claim where prisoner suffered no physical harm).

Sides was allegedly at risk for self-harm.  He was confined in a restricted housing unit as discipline for an alleged misconduct.  Neither Apodaca nor Gatto was responsible for placing Sides

---

[11] Sides identifies each of them as being in charge of the RHU.  He does not allege any facts that state or suggest that they were responsible for the conditions of confinement prior to Sides' placement in the RHU.

in the RHU.  As its name implies, there are certain restrictions on an inmate's activities in the RHU as a matter of policy.  There is a complete lack of any clarity about what conditions, if any, to which Sides was subject in the RHU that might represent cruel and unusual punishment. Moreover, Sides does not allege that he sustained any physical harm while housed there.  His mere statement that Gatto and Apodaca issued certain orders or acquiesced in retaliatory conduct is insufficient to plausibly plead that either Gatto or Apodaca was deliberately indifferent to serious risk to his health or safety.

Simply put, as pleaded, there are insufficient facts to support a claim that either Gatto or Apodaca was deliberately indifferent to Sides' health or safety simply by issuing orders related to his confinement in the RHU.  Therefore, his claims against them will be dismissed without prejudice.

**C.  Fourteenth Amendment Claim**

Sides appears to allege several claims related to the Fourteenth Amendment.  First, he alleges that Fiscus denied him due process because he did not receive a copy of the misconduct. He also states that Fiscus deliberately subjected him to disciplinary action despite knowing that she could not impose discipline because Sides' conduct occurred during a suicide attempt.

Sides also alleges that when he appealed Fiscus' decision to the PRC Defendants, they chose to uphold the decision despite knowing that it was wrongfully imposed.  He also alleges that he discussed this issue with Oberlander and that Gatto and Apodaca had a duty to correct the "legality of the disciplinary treatment."

1.  Claims against Fiscus

To establish a due process violation a plaintiff must show that he was deprived of a liberty interest protected by the Constitution or a statute.  *Sandin v. Conner*, 515 U.S. 472, 479 n.4, 483-

84 (1995).  In relevant part, a prisoner's liberty interests are not violated unless a condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484; *see, e.g.*, *Williams v. Sec'y Pa. Dep't of Corrs.*, 848 F.3d 549, 559 (3d Cir. 2017) (to establish such a liberty interest in the prison conditions context, "the right alleged must confer 'freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'") (quoting *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)); *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003).

Thus, in determining whether a plaintiff's due process rights have been violated, the Court must first consider whether he has adequately pleaded a denial of a liberty interest.  Only if he makes such a showing is it necessary for the Court to evaluate "whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989).  In deciding whether a protected liberty interest exists in cases such as this, the Court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions.  *See, e.g.*, *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (citing *Sandin*, 515 U.S. at 486).

Sides alleges that he was in the RHU for thirty days.  As discussed above, there is a lack of clarity about what conditions, if any, to which Sides was subject in the RHU.  As currently pled, the Second Amended Complaint fails to state sufficient facts to establish the kind of atypical deprivation of prison life necessary to implicate a protected liberty interest.  *See Smith*, 293 F.3d at 652 (seven months in disciplinary custody insufficient to trigger a due process violation); *Griffin*, 112 F.3d at 706-08 (fifteen-month placement in administrative custody did not implicate a protected liberty interest because said confinement was not atypical); *Young v. Beard*, 227 F. App'x 138 (3d Cir. 2007) (aggregate 980 days in disciplinary segregation did not violate the due

process clause).  Accordingly, the Second Amended Complaint does not state a procedural due process claim against Fiscus.

Sides also appears to claim that Fiscus violated his due process rights because she disciplined him in violation of DOC policy and treated him differently than other inmates "on his status."  He claims that Fiscus knew that her decision was against DOC policy but deliberately subjected him to punishment nonetheless.  As an initial matter, a violation of a DOC policy does not, in and of itself, represent a constitutional violation.  *See, e.g.*, *Pettis v. Everhart*, 2020 WL 5548719, *5 (M.D. Pa. Sept. 16, 2020) (plaintiff's claims against defendants for violating DOC policies dismissed for failure to state a claim upon which relief can be granted), aff'd, 2021 WL 1664111 (3d Cir. Apr. 28, 2021*); Noble v. Wetzel*, 2019 WL 4279975, *10 (W.D. Pa. Aug. 1, 2019) (plaintiff's claim that defendants violated DOC policies must be dismissed with prejudice), report and recommendation adopted by 2019 WL 4279016 (W.D. Pa. Sept. 10, 2019).  Thus, even if Fiscus violated a DOC policy when upholding the misconduct, this conduct is not a sufficient basis to plead a Fourteenth Amendment claim.

Sides alleges that he is proceeding under the Equal Protection Clause, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons *similarly situated* should be treated alike.'"  *Artway v. Attorney Gen. of State of N.J.,* 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); s*ee also United States v. Armstrong*, 517 U.S. 456, 456-57 (1996) (Equal Protection Clause prohibits a decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification).

To establish a violation of the Equal Protection Clause, a plaintiff must ordinarily allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). If Sides is stating "a claim under [a class of one theory], [he] must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006)). Thus, at the pleading stage, an inmate must allege facts specific to his case that would support an inference that unlawful considerations played a part in his disparate treatment.

Sides' allegations fail to establish an equal protection claim. Other than his bald allegation that he was treated differently than other inmates, he does not set forth any facts to support this conclusory statement. He does not identify any inmates who engaged in similar conduct and were treated differently by Fiscus. Thus, he has failed to plausibly plead an equal protection claim against Fiscus.

Based on the above, Sides' Fourteenth Amendment due process and equal protection claims against Fiscus will be dismissed without prejudice for failure to state a claim.

## 2.   Claim against the PRC Defendants and Oberlander

Sides asserts that the PRC Defendants and Oberlander are required to hear misconduct appeals. He alleges that although they knew that Fiscus had exceeded her authority, they failed to overturn her decision.

Courts have held that the alleged failure of a grievance officer to remedy the actions of another defendant does not demonstrate sufficient involvement to state a claim for relief. Nor can a prisoner hold a prison official liable merely on the basis of a response to a grievance or request. *See Alexander v. Fritch*, 2010 WL 1257709, at *16 (W.D. Pa. Mar. 26, 2010) ("Plaintiff cannot impose liability against any of the Defendants based solely on his or her involvement with his correspondence, grievances and misconducts as such conduct is insufficient to establish personal involvement as required under 42 U.S.C. § 1983."), aff'd, 396 F. App'x 867 (3d Cir. 2010); *Rogers v. United States*, 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.").

Allegations of personal involvement after-the-fact cannot support personal involvement in the incident itself. *See, e.g.*, *Rode*, 845 F.2d at 1208 (involvement in disposing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 295 (3d Cir. 2016) (affirming district court's decision to dismiss plaintiff's claims against warden and deputy warden because the "complaint makes clear that [plaintiff] only spoke to these defendants after the alleged retaliation occurred," and provides no basis for inferring that they "were personally involved in any purported retaliation"); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (plaintiff's allegation that prison officials responded inappropriately, or failed to respond to a

prison grievance, did not establish that the official was involved in the underlying unconstitutional conduct).

Thus, Sides' allegations that the PRC Defendants and Oberlander improperly handled his misconduct appeal fail to state a plausible Fourteenth Amendment due process claim against them, and his claim against them will be dismissed with prejudice.

### 3. Claim against Gatto and Apodaca

Sides' sole due process claim against Gatto and Apodaca is that they had a duty to correct the legality of his disciplinary treatment by Fiscus. There are no facts pleaded in the Second Amended Complaint that support any such duty. Gatto and Apodaca are alleged to be a lieutenant and captain, respectively, in the RHU who are responsible for issuing orders to other correctional officers. They had no role in the hearing and did not impose discipline on Sides. Sides does not allege that he appealed the outcome of the hearing to Gatto or Apodaca. Thus, Sides has failed to plead any personal involvement by Gatto or Apodaca in the hearing, the punishment imposed or the appeal of the imposed punishment. At most, they were in charge of operations in the RHU to which Sides was sentenced for thirty days. Thus, the lack of their personal involvement in any atypical deprivation of prison life is fatal to Sides' claim against them and, therefore, his due process claim against them is dismissed without prejudice for failure to state a claim.

## V.     Leave to Amend

When dismissing a civil rights case for failure to state a claim, a court must give a plaintiff a chance to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alston v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

Under the circumstances presented here, Sides may, if he so chooses, file another amended complaint to attempt to cure the pleading deficiencies with respect to those claims that the Court does not dismiss with prejudice.   Alternatively, he may choose to proceed with the Second Amended Complaint as it stands but only with respect to the retaliation claim against Fiscus.

## VI.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 35) will be granted in part and denied in part.

- The Motion to Dismiss the First Amendment retaliation claim against Adams, Mongelluzzo, Blicha, Gustafson, Gatto and Oberlander will be granted without prejudice.

- The Motion to Dismiss the First Amendment retaliation claim against Fiscus will be denied.

- The Motion to Dismiss the Eighth Amendment claim will be granted with prejudice as to Fiscus.

- The Motion to Dismiss the Eighth Amendment claim will be granted without prejudice as to Adams, Mongelluzzo, Blicha, Gustafson, Oberlander, Apodaca and Gatto.

- The Motion to Dismiss the Fourteenth Amendment Due Process claim will be granted without prejudice as to Fiscus, Gatto and Apodaca.

- The Motion to Dismiss the Fourteenth Amendment Due Process claim will be granted with prejudice as to Adams, Mongelluzzo, Blicha, Gustafson and Oberlander.

A separate Order will follow.

Dated: December 1, 2022                    /s/ Patricia L. Dodge
                                                              PATRICIA L. DODGE
                                                              United States Magistrate Judge